**GEORGIA SOUTHERN AND FLORIDA RAILWAY COMPANY, a Corporation, Plaintiff,**

v.

**ATLANTIC COAST LINE RAILROAD COMPANY, a Corporation, Defendant.**

**Civ. A. No. 65-349.**

United States District Court
M. D. Florida,
Jacksonville Division.

Jan. 27, 1966.

James A Bistline, Peter S. Craig, Washington, D. C., Mathews, Osborne & Ehrlich, H. P. Osborne, Jr., Jacksonville, Fla., for plaintiff.

Kurz, Toole, Maness & Martin, William H. Maness, Jacksonville, Fla., for defendant.

SIMPSON, Chief Judge.

The Plaintiff, Georgia Southern and Florida Railway Company, a Corporation, hereinafter referred to as "GS&F," filed its Complaint herein seeking to enjoin and restrain the Defendant, Atlantic Coast Line Railroad Company, a Corporation, hereinafter referred to as "Coast Line," from constructing approximately 8.5 miles of track in Hamilton County, Florida, contending that such construction would constitute an invasion of the

GS&F territory in violation of Section 1(18) of the Interstate Commerce Act (49 U.S.C. 1(18)).

■ This Court has jurisdiction under Section 1(20) of said Act and is empowered to determine such facts as are essential to determine whether or not such construction does in fact violate Section 1(18) of said Act, without sending the case to the Interstate Commerce Commission for prior consideration. See Pennsylvania Railroad Co. v. Reading Company, 132 F.Supp. 616 (E.D.Pa.1955) and cases therein cited.

The cause was set down before this Court upon GS&F's Motion for a Preliminary Injunction and due notice thereof was given Defendant. When the cause came on for hearing, Coast Line denied that the construction of said tracks falls within the category of an "extension" and affirmatively asserted in its Memorandum in Opposition to Motion for Preliminary Injunction, supported by Affidavits, that the construction was a "spur, industrial, team, switching, or side tracks" permitted under Section 1(22) of the Interstate Commerce Act without the necessity of obtaining a Certificate of Public Convenience and Necessity pursuant to said Section 1(18). In addition, Coast Line challenged the sufficiency of Plaintiff's Complaint by a Motion to Dismiss which has been carried by the Court along with the testimony, evidence and argument on Plaintiff's said Motion for Preliminary Injunction.

Based on such testimony and evidence presented on November 8, 1965, and upon consideration of the Memorandum filed by each of the parties herein, the Court makes the following findings of fact and conclusions of law:

1. Coast Line, and its predecessor companies, have maintained a line of railroad passing through the center of Hamilton County, Florida, in a generally north-south direction since about 1865 and the GS&F has maintained a line of railroad through said County in a generally northwest-southeasterly direction since 1890. Viewing the railroad tracks which pass through said County like the spokes on a wheel, the "hub" of the two railroads is located approximately in the center of the County at the town of Jasper, Florida, where the tracks cross each other and thereby make a large 135 degree quadrant or sector east of said tracts north and southeast of Jasper within which area lies the majority of the mineable phosphate deposits which private industries are just beginning to recover and produce commercially. Both railroads can extend their tracks from their respective main lines to any point within said quadrant without crossing the other's tracks, at the present time, and Coast Line's construction will not cross GS&F's tracks.

2. Prior to June 23, 1965, neither railroad had extended any line of track into the area of these phosphate deposits (or to any other point in the County) but on that date the GS&F began construction of an extension or spur from its main line at a point approximately 12 miles southeast of the point where the two railroads cross at Jasper, Florida; such turnout being located just south of its agency station known as Genoa and from that point said railroad has constructed and placed in service approximately 5.4 miles of track leading to the phosphate plant of Occidental of Florida, Inc., which has been completed and which began production about October 10, 1965. The construction of this line of track by GS&F was carried out *without* obtaining a Certificate of Public Convenience and Necessity, and GS&F acted under the provisions of Section 1(22) of the Interstate Commerce Act which permit construction of a "spur, industrial, team, switching or side tracks * * *" without ICC authority. This is the same authority upon which Coast Line also is acting.

3. On or about July 19, 1965, nearly three months prior to the completion of the line of track by GS&F, Coast Line began construction of the line of track herein sought to be enjoined, knowledge of which construction had been known to GS&F since May of 1965 when rumors

thereof came to Allen H. Douglas, Vice-President in charge of Industrial Development for the GS&F. Notwithstanding such knowledge, GS&F made no move to enjoin such construction until the filing of this section on November 2, 1965, and it now asserts that it had no Complaint about such construction *until the construction crossed State Road 6* which travels generally eastwardly from Jasper, Florida. Although Coast Line did not record its Deeds to right-of-way south and east of State Road 6 until September of 1965, GS&F knew, or reasonably should have known, that the Coast Line's construction was directed towards the phosphate deposits on land owned or leased by Owens-Illinois because before commencement of its own construction, GS&F had sought to obtain a right-of-way over the land of Owens-Illinois not only to serve Owens-Illinois but also to reach the Occidental site. Such request for right-of-way was emphatically refused by Owens-Illinois prior to the date GS&F began construction of its tracks on June 23, 1965 and such tracks now reach Occidental from a point south and east of the lands of Owens-Illinois. Thus, GS&F is, for all practical purposes, precluded from entering into and serving the proposed plant even if granted the relief sought.

4. In opposing the Motion for Preliminary Injunction and in support of its Motion to Dismiss, Coast Line relies principally upon facts which will meet the tests set forth in the Pennsylvania Railroad Company v. Reading Company case, supra, and the undisputed facts before this Court does show that the construction sought to be enjoined is wholly within one state and would, (1) provide rail service to serve only a single shipper; (2) that it would not provide for passenger, telephone, telegraph, loading platform, station or station agent service usually indicative of branch line service; (3) that the length of the construction (maximum of 8.5 miles) is not so great under the circumstances so as to be considered in the nature of a branch line; (4) that the tracks will be used only for switching service incidental to line haul movements; (5) that it will not involve special financing or condemnation proceedings; (6) that the costs thereof is reasonable for an industrial spur in light of the traffic involved; and (7), that the Coast Line has been requested by Owens-Illinois to provide the service for a single customer similar to that provided by GS&F for Occidental, or which may be provided for other industries in the same area similarly situated.

5. One additional factor which must be considered and which was considered in the Pennsylvania Railroad Company v. Reading Company case, supra, is the question of whether or not the construction of the additional tracks invades the territory of another railroad. This issue must necessarily control the disposition of this case. It is raised by the affirmative allegations in plaintiff's Complaint in these words, to-wit:

> "Plaintiff is the only common carrier by railroad authorized to serve this area" (Par. II)

> "Defendant does not and has not served the territory south of State Road 6 and east of Plaintiff's line of railroad." (Par. III)

> " * * * by crossing to the South of State Road 6, would invade territory contiguous to and presently served by, the Plaintiff." (Par. VI)

6. The burden of proving, at least prima facie, the foregoing allegations is upon the Plaintiff and since such allegations themselves constitute conclusions, this Court must look to the facts developed on this issue. It is essential that such allegations be supported by ultimate facts in order to justify the issuance of a Preliminary Injunction, the granting of which requires a showing of "reasonable certainty of success".

7. In order to meet its burden, and to evidence its claim that the disputed area is *its territory*, GS&F relies upon (1) the physical presence of its 75 year old main line of tracks extending southeastwardly from Jasper, Florida, and along the southwest side of such phosphate de-

posits; (2) it relies upon a showing that 85 carloads of products were loaded on its cars during the first nine months of 1965 at the stations of Hilcoat, Genoa and Facil; and, (3), it relies upon the fact that at the nearest point, its tracks lie within one and a half miles of the *probable* (but unsettled) location of the Owens-Illinois phosphate plant.

8. Beyond the mere showing of its presence, its close proximity, the movement of forest products from the general area and the completed construction of its own track to Occidental, there is no other evidence that by ICC Order, Court decision or by custom and practice the disputed area has been served *solely and exclusively* as the "territory of GS&F". On the other hand, the undisputed evidence shows that both railroads have been in Hamilton County for over 75 years (Coast Line for 100 years) and there is no evidence that either railroad has ever before extended a spur, industrial, team or switching track to any point in the disputed area, or for that matter to any point beyond a few hundred feet of their tracks. It is undisputed that both railroads have carried forest products out of Hamilton County, Coast Line having loaded 408 carloads during the first nine months of 1965. It is undisputed that some forest products have moved by Coast Line from the disputed area, such as stumps moved to Brunswick, Georgia, to the Hercules Powder plant. And, it is undisputed that neither railroad has ever moved phosphate shipments out of Hamilton County and that such is "brand new" traffic.

9. Therefore, the quoted conclusions alleged by Plaintiff that it is the only railroad *authorized* to serve this area and that the defendant does not and *has not served* the territory south of State Road 6 and east of Plaintiff's line of railroad must fail for want of evidential support.

Furthermore, it affirmatively appears from the map filed in evidence by Coast Line that the selection of State Road 6 (as a so-called "territorial boundary" between "exclusive areas" of rail service offered by competing carriers) is itself arbitrary and unreasonable and not supported by any evidence herein because, (1) GS&F has at least a half mile of track which lies east of Coast Line's main line and north of State Road 6; and, (2) the distance from GS&F's main line to the proposed Owens-Illinois plant site is no closer than the distance between the GS&F tracks north of State Road 6 and the point at which the Coast Line's construction intersects said State Road 6.

10. In reaching this conclusion, the Court is not overlooking the single fact that the GS&F main line *is closer to the proposed plant*. But this fact does not make the territory exclusively that of GS&F. The task of this Court would be made easy if this, or any other similar dispute, could be resolved simply by measuring the distance that each competing railroad would have to travel to reach a particular shipper. Furthermore, it affirmatively appears from the testimony and evidence in this case (presented by GS&F) that all offers of GS&F to provide rail service to Owens-Illinois have been rejected by that Company and clearly the tracks of GS&F cannot be extended to the proposed site on the Owens-Illinois property without a Certificate of Public Convenience and Necessity, since such proposed site cannot be reached by GS&F without the condemnation of property and/or the violation of governing tests laid down in Pennsylvania Railroad Company v. Reading Company, supra. This Court is not vested with jurisdiction to determine present or future public convenience and necessity, in which event distance might well be a material if not controlling factor. In the absence of such jurisdiction, the Court must conclude that the length of the spur required to reach a given shipper is not controlling on the question of invasion of territory.

11. From the cases cited both by Plaintiff and Defendant, dealing with disputes as to whether a particular track is permitted by paragraph 1(22) of the Interstate Commerce Act as a "spur, in-

dustrial, et cetera", all fail to suggest that Congress intended the relative effect of railroad competition to influence the determination of the question of invasion of territory when raised in an enforcement proceeding in the District Court, in the absence of an ICC Order. The right of Owens-Illinois to prefer one carrier over the other, in seeking rail service, is unlimited and if such preferred carrier can provide such service without violating the established tests mentioned in the Pennsylvania Railroad Company v. Reading Company case, supra, the remedy (if any) of the aggrieved carrier does not lie in the District Court.

12. To summarize, it might be said that the only issue before this Court and over which it has jurisdiction is the characterization of the track in question and where, as here, the record establishes the fact that both railroads have served the area in question on the same basis prior to the commencement of construction of lead tracks to transport a new product, such tracks by each railroad to serve different and competing industries must be said to merely continue the competitive relationship found previously existing and would not result in the invasion of territory by either carrier.

13. For the reasons hereinabove stated, this Court concludes that Plaintiff's Complaint and the evidence and testimony presented in support thereof, when resolved in a light most favorable to the Plaintiff, fails to establish even prima facie the allegations of invasion of territory. It follows that there is no probability of success and that said Motion for Preliminary Injunction should be denied and said Motion to Dismiss should be granted.

Accordingly, it is

Ordered and adjudged that Plaintiff's Motion for Preliminary Injunction should be and the same is hereby denied, and Defendant's Motion to Dismiss should be and the same is hereby granted, with prejudice, at the cost of the Plaintiff.